## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZapFraud, Inc.<br><br>      Plaintiff,<br><br>  v.<br><br>Mimecast North America, Inc.<br>Mimecast UK Limited<br>Mimecast Services Ltd.<br><br>      Defendants. | Civil Action No. 19-cv-1690-CFC<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Plaintiff ZapFraud, Inc. ("ZapFraud"), for its Complaint against defendants Mimecast North America, Inc., Mimecast UK Limited, and Mimecast Services Ltd. (collectively "Defendants" or "Mimecast"), hereby alleges as follows:

### Introduction

1. ZapFraud is a technology company founded by leading email security researcher Dr. Bjorn Markus Jakobsson. ZapFraud innovates in the area of email security and provides email security solutions. Among other things, ZapFraud's patented technology automatically and reliably identifies Business Email Compromise scams—a growing threat that has caused a total of over $12.5 billion of global reported losses as of 2018—and protects businesses and their employees against email-based deception and fraud attacks.

2. Mimecast has used, and continues to use ZapFraud's patented technology.

## Nature Of The Action

3.  This action arises under 35 U.S.C. § 271 for Mimecast's infringement of ZapFraud's United States Patent Nos. 10,277,628 ("the '628 patent") and 10,609,073 ("the '073 patent") (collectively "patents-in-suit").

## The Parties

4.  Plaintiff ZapFraud is a Delaware corporation with its principal place of business at 118 Ramona Rd, Portola Valley, CA 94028.  ZapFraud is operated and controlled by Dr. Jakobsson.

5.  Defendant Mimecast North America ("Mimecast NA") is a Delaware corporation with its principal place of business at 191 Spring St, Lexington, MA, 02421.  Mimecast NA may be served with process through its registered agent, the Corporation Trust Company at 1209 Orange St, Wilmington, DE, 19801.

6.  Defendant Mimecast Services, Ltd ("Mimecast Services") is a U.K. corporation with its principal place of business at CityPoint, One Ropemaker Street, Moorgate, London EC2Y 9AW, United Kingdom.  Mimecast Services may be served in accordance with U.S. or U.K. law.

7.  Mimecast Services is the owner and controller of the website www.mimecast.com. The Mimecast website provides information about Mimecast's products and businesses and contains a customer login portal for access to Mimecast's products and services.  This website is accessible to U.S. customers, and contains Mimecast's U.S. contact information such as addresses and phone numbers.

8.  Defendant Mimecast UK Ltd. ("Mimecast UK") is a U.K. corporation with its principal place of business at CityPoint, One Ropemaker Street, Moorgate, London EC2Y 9AW, United Kingdom.  Mimecast UK may be served in accordance with U.S. or U.K. law.

9. Mimecast UK is the parent company of Mimecast NA and Mimecast Services. The holding company of Mimecast UK, Mimecast Limited, is publicly traded on the NASDAQ market and reports U.S. revenues in its annual reports.

10. Mimecast provides a software-as-a-service (SaaS) email security solution. Mimecast's email security solution uses and benefits from Dr. Jakobsson's patented technology, including the patents-in-suit.

## Jurisdiction And Venue

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Mimecast NA. Mimecast NA is incorporated under the law of the State of Delaware, and accepts service through its registered agent.

13. This Court has personal jurisdiction over Mimecast Services and Mimecast UK. These U.K. entities have, directly or through agent, committed, aided, abetted, contributed to, and/or participated in the commission of acts giving rise to this action within the State of Delaware and this judicial district and/or have established minimum contacts within the forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

14. Defendants have placed products and services that practice the claims of the patents-in-suit into the stream of commerce with the reasonable expectation or knowledge that actual or potential users of such products or services were located within the State of Delaware and this judicial district. For example, Defendants distribute their products and services through

channel partners that provide services to end users within the State of Delaware and this juridical district.

15. On information and belief, Defendants have sold, advertised, solicited customers, and marketed and distributed their products and services that practice the claims of the patents-in-suit, or aid and abet in the practice of the claims of the patents-in-suit, in the State of Delaware and this judicial district.

16. On information and belief, Defendants have derived substantial revenues from their infringing acts occurring within the State of Delaware and this juridical district.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). In particular, Mimecast Services and Mimecast UK are foreign entities for which venue is proper where there is personal jurisdiction.

**Background Facts**

18. Dr. Jakobsson founded ZapFraud in 2014.

19. ZapFraud pioneered the detection of Business Email Compromise scams through automated analysis of deceptive content and structure, and takes actions to, for example, quarantine, discard, tag, and/or deliver the incoming emails.

20. Dr. Jakobsson is and has been a frequent speaker on email fraud prevention, including on ZapFraud's fraud detection technology at industry events and conferences, such as RSA Conference 2016, Black Hat USA 2015, and RSA Conference 2014.

21. Defendant Mimecast attends such industry events and conferences as a sponsor and/or an exhibitor. Such conferences permit attendees to learn about important developments in information and email security through first-hand interactions with peers, luminaries, and

emerging and established companies. For example, Mimecast attended RSA Conference 2016, where Dr. Jakobsson presented.

## COUNT I

## Infringement Of The '628 Patent

22. ZapFraud incorporates by reference the preceding paragraphs as if fully set forth herein.

23. The '628 patent, entitled "Detecting Phishing Attempts," was duly and legally issued by the United States Patent and Trademark Office on April 30, 2019 and corrected on October 8, 2019. A copy of the '628 patent is attached hereto as Exhibit A. Dr. Jakobsson is the sole inventor of the '628 patent.

24. ZapFraud is the exclusive owner of all rights, title, and interest of the '628 patent, and has the right to bring this suit for injunctive relief and to recover damages for any current or past infringement of the '628 patent.

25. The '628 patent generally relates to a system, method, and computer program for detecting fraud or phishing attempts in email communications.

26. The '628 patent is valid and enforceable.

27. At the time of the invention of the '628 patent, email services used various technologies such as whitelisting, blacklisting, Domain-based Message Authentication, Reporting & Conformance ("DMARC"), and Domain Keys Identified Mail ("DKIM") to protect email recipients from potential spam, fraud, or phishing attempts.

28. However, existing technologies could be readily defeated by unscrupulous individuals who craft spam, fraud, scam, or phishing emails. For example, the unscrupulous individual may use terms that a human would recognize, but might not appear on a blacklist. As

another example, existing technologies were not capable of detecting a type of phishing-attempt emails that incorporate human-readable content indications of association of a message with an authoritative entity, and thus appear to be legitimate/trustworthy to a recipient. The degree of possible customization of electronic communications makes it particularly difficult for existing email filters to provide sufficient protection.

29. The invention of the '628 patent solves the problems with existing technologies by, for example, combining an assessment of the likely end-user interpretation of the message with an assessment of whether the apparent sender matches the actual sender, and taking action in response, such as filtering or reporting the message.

30. In violation of 35 U.S.C. § 271, Mimecast has infringed and/or induced others to infringe one or more claims of the '628 patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products, solutions, systems, and services encompassed by those claims, including email security products and services that scan the display name of emails to identify email security threats, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect.

31. Mimecast provides email security products and services that protect customers against email-based targeted social engineering attacks known as Business Email Compromise.

32. Mimecast's email security products and services, such as Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect, check combinations of impersonation attack identifiers, such as the similarity of the sender's domain to the customer's domain, and whether the sender's display name is the same as one of the internal user display names. Mimecast takes action with respect to incoming email traffic based on the number of identifiers that are triggered, such as hold, tag, or bounce.

33. For example, Mimecast infringes at least claim 1 of the '628 patent through its classification system (such as Mimecast Email Security with Targeted Threat Protection) for detecting attempted deception in an electronic communication (such as an incoming email), comprising:

    a. a client device (such as Mimecast Administration Console) used to access the electronic communication addressed to a user of the client device;

    b. at least one of a profile and content database (such as a Mimecast database that stores internal user names); and

    c. at least one server (such as a Mimecast Email Security server) in communication with the client device and the at least one of the profile and content database, the at least one server comprising:

        i. an interface configured to receive the electronic communication; and

        ii. a set of one or more processors configured to:

            1. parse a display name associated with the electronic communication;

            2. determine, by at least one classifier component (such as a software component for Impersonation Protect), that the electronic communication appears to have been transmitted on behalf of an authoritative entity (such as an internal user of a Mimecast customer) by:

                a. computing a similarity distance between the display name and at least a name of the authoritative entity (such as the name of the internal user), wherein the name of the authoritative entity is retrieved from the at least one of the

profile and the content database, wherein the similarity distance is computed by comparison of items by at least one of:

   i. basing the comparison on at least one of a match between the display name of the electronic communication (such as the display name of the incoming email's sender) and the display name of the authoritative entity, and

   ii. a match between headers associated with the electronic communication (such as the header of the incoming email) and headers associated with the authoritative entity (such as the email header of the internal user),

   iii. wherein the matches are determined by at least one of: determining that the compared items are the same, determining that the compared items have a Hamming distance below a threshold value, determining that the compared items have an edit distance below a threshold value, determining that a support vector machine indicates a similarity based on previously trained examples, determining a similarity score based on how many characters were replaced by characters of sufficient similarity and

    performing at least one normalization followed by a comparison (such as by normalizing the display name of the incoming email's sender and determining a match between the normalized display name and the internal user's name);

3. determine, by the at least one classifier component, that the electronic communication was not transmitted with authorization from the authoritative entity (such as by analyzing, for example, the sender's email address, the sender's domain, and/or mismatch between the sender's header email address and the reply-to email address);

4. based at least in part on determining that the electronic communication appears to have been transmitted on behalf of the authoritative entity and determining that the electronic communication was not transmitted with authorization from the authoritative entity, perform a security determination including classifying the electronic communication, wherein the classifying includes two or more security classifications including good and bad (such as determining whether or not the incoming email meets a number of identifiers defined in an Impersonation Protection definition); and

5. based at least in part on the security determination resulting in a bad classification, perform an action comprising at least one of erasing

       the electronic communication, marking up the electronic communication at least in part by adding a warning or an explanation, flagging the electronic communication, forwarding the electronic communication to a third party, placing the electronic communications in the spam folder, and forwarding the electronic communication to a repository (such as holding email for review, tagging the email body, subject, or header, forwarding email to a moderator or an administrator, or bouncing the email back to sender); and

   iii. a memory coupled to the processor and configured to provide the processor with instructions.

34. Mimecast infringes at least claim 1 of the '628 patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States such a classification system. For example, Mimecast makes the system by providing all the components of the system and combining the components into an infringing system. As another example, Mimecast uses the system by placing the system into service, exercising control of the system, and obtaining benefits from using the system.

35. Third parties, including Mimecast's customers and partners, have infringed, and continue to infringe, one or more claims of the '628 patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, Mimecast email security products and services that scan the display name of emails to identify email security threats, including, but not

limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect.

36. Mimecast has had knowledge of and notice of the '628 patent and its infringement since at least the filing of this action.

37. Mimecast has induced infringement, and continues to induce infringement, of one or more claims of the '628 patent under 35 U.S.C. § 271(b) since at least the filing of this action. Mimecast actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '628 patent by selling or otherwise supplying Mimecast email security products and services that scan the display name of emails to identify email security threats, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect; with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States these products and services to infringe the '628 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of these products and services and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to these products and services.

38. Mimecast has contributed to the infringement by third parties, including Mimecast's customers, and continues to contribute to infringement by third parties, of one or more claims of the '628 patent under 35 U.S.C. § 271(c) since at least the filing of this action, by selling and/or offering for sale in the United States, and/or importing into the United States, Mimecast email security products and services that scan the display name of emails to identify email security threats, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect, knowing that these products and services constitute a material part of

the inventions of the '628 patent, knowing that these products and services are especially made or adapted to infringe the '628 patent, and knowing that these products and services are not staple articles of commerce suitable for substantial noninfringing use.

39. ZapFraud has been and continues to be damaged by Mimecast's infringement of the '628 patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

40. Mimecast's infringement of the '628 patent has been and continues to be willful since at least the filing of this action.

41. Mimecast's conduct in infringing the '628 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT II

### Infringement Of The '073 Patent

42. ZapFraud incorporates by reference the preceding paragraphs as if fully set forth herein.

43. The '073 patent, entitled "Detecting Phishing Attempts," was duly and legally issued by the United States Patent and Trademark Office on March 31, 2020. A copy of the '073 patent is attached hereto as Exhibit B. Dr. Jakobsson is the sole inventor of the '073 patent.

44. ZapFraud is the exclusive owner of all rights, title, and interest of the '073 patent, and has the right to bring this suit for injunctive relief and to recover damages for any current or past infringement of the '073 patent.

45. The '073 patent generally relates to a system, method, and computer program for detecting fraud or phishing attempts in email communications.

46. The '073 patent is valid and enforceable.

47. At the time of the invention of the '073 patent, email services used various technologies such as whitelisting, blacklisting, Domain-based Message Authentication, Reporting & Conformance ("DMARC"), and Domain Keys Identified Mail ("DKIM") to protect email recipients from potential spam, fraud, or phishing attempts.

48. However, existing technologies could be readily defeated by unscrupulous individuals who craft spam, fraud, scam, or phishing emails. For example, the unscrupulous individual may use terms that a human would recognize, but might not appear on a blacklist. As another example, existing technologies were not capable of detecting a type of phishing-attempt emails that incorporate human-readable content indications of association of a message with an authoritative entity, and thus appear to be legitimate/trustworthy to a recipient. The degree of possible customization of electronic communications makes it particularly difficult for existing email filters to provide sufficient protection.

49. The invention of the '073 patent solves the problems with existing technologies by, for example, combining an assessment of the likely end-user interpretation of the message with an assessment of whether the apparent sender matches the actual sender, and taking action in response, such as filtering or reporting the message.

50. In violation of 35 U.S.C. § 271, Mimecast has infringed and/or induced others to infringe one or more claims of the '073 patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products, solutions, systems, and services encompassed by those claims, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect.

51. For example, Mimecast infringes at least claim 1 of the '073 patent through its classification system (such as Mimecast Email Security with Targeted Threat Protection) for

detecting attempted deception in an electronic communication (such as an incoming email), comprising:

    a. a client device (such as Mimecast Administration Console) used to access the electronic communication addressed to a user of the client device;

    b. at least one of a profile and content database (such as a Mimecast database that stores internal user names); and

    c. at least one server (such as a Mimecast Email Security server) in communication with the client device and the at least one of the profile and content database, the at least one server comprising:

        i. an interface configured to receive the electronic communication; and

        ii. a set of one or more processors configured to:

            1. determine, by at least one classifier component (such as a software component for Impersonation Protect), that the electronic communication appears to have been transmitted on behalf of an authoritative entity (such as an internal user of a Mimecast customer) by:

                a. computing a similarity distance between a first item from the electronic communication and a second item associated with the authoritative entity, wherein the second item associated with the authoritative entity is retrieved from the at least one of the profile and content database, wherein the similarity distance is computed by performing a match between at least one of:

    i. the first item comprising a display name of the electronic communication (such as the display name of the incoming email's sender) and the second item comprising a display name of the authoritative entity,

   ii. the first item comprising an email address of a sender of the electronic communication and the second item comprising an email address of the authoritative entity,

  iii. the first item comprising at least a part of a text comprising the electronic communication and the second item comprising at least a part of a text associated with the authoritative entity; and

  iv. the first item comprising a header associated with the electronic communication (such as the header of the incoming email) and the second item comprising a header associated with the authoritative entity (such as the email header of the internal user),

   v. wherein the match is determined by at least one of: determining that first item and the second item are the same, determining that the first item and the second item have a Hamming distance below a first threshold value, determining that the first item and the second item have an edit distance below a second

threshold value, determining that a support vector machine indicates a similarity between the first item and the second item based on previously trained examples, determining a similarity score based on how many characters in the second item were replaced by characters in the first item and performing at least one normalization prior to performing the match (such as by normalizing the display name of the incoming email's sender and determining a match between the normalized display name and the internal user's name);

2. determine, by the at least one classifier component, that the electronic communication was not transmitted with an authorization from the authoritative entity (such as by analyzing, for example, the sender's email address, the sender's domain, and/or mismatch between the sender's header email address and the reply-to email address);

3. based at least in part on determining that the electronic communication appears to have been transmitted on behalf of the authoritative entity and determining that the electronic communication was not transmitted with the authorization from the authoritative entity, perform a security action comprising at least one of: erasing the electronic communication, marking up the

>> electronic communication at least in part by adding a warning or an explanation, flagging the electronic communication, forwarding the electronic communication to a third party, placing the electronic communications in a spam folder, and forwarding the electronic communication to a repository (such as holding email for review, tagging the email body, subject, or header, forwarding email to a moderator or an administrator, or bouncing the email back to sender); and
>
> iii. a memory coupled to the set of one or more processors and configured to provide the set of one or more processors with instructions.

52. Mimecast infringes at least claim 1 of the '073 patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States such a classification system. For example, Mimecast makes the system by providing all the components of the system and combining the components into an infringing system. As another example, Mimecast uses the system by placing the system into service, exercising control of the system, and obtaining benefits from using the system.

53. Third parties, including Mimecast's customers and partners, have infringed, and continue to infringe, one or more claims of the '073 patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products, solutions, systems, and services encompassed by those claims, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect.

54. Mimecast has had knowledge of and notice of the '073 patent and its infringement since at least the filing of this Complaint.

55. Mimecast has induced infringement, and continues to induce infringement, of one or more claims of the '073 patent under 35 U.S.C. § 271(b) since at least the filing of this Complaint. Mimecast actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '073 patent by selling or otherwise supplying products, solutions, systems, and services encompassed by those claims, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect, with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States these products and services to infringe the '073 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of these products and services and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to these products and services.

56. Mimecast has contributed to the infringement by third parties, including Mimecast's customers, and continues to contribute to infringement by third parties, of one or more claims of the '073 patent under 35 U.S.C. § 271(c) since at least the filing of this Complaint, by selling and/or offering for sale in the United States, and/or importing into the United States, products, solutions, systems, and services encompassed by those claims, including, but not limited to, Mimecast Email Security service, Targeted Threat Protection, and Impersonation Protect, knowing that these products and services constitute a material part of the inventions of the '073 patent, knowing that these products and services are especially made or adapted to infringe the

'073 patent, and knowing that these products and services are not staple articles of commerce suitable for substantial noninfringing use.

57. ZapFraud has been and continues to be damaged by Mimecast's infringement of the '073 patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

58. Mimecast's infringement of the '073 patent has been and continues to be willful since at least the filing of this Complaint.

59. Mimecast's conduct in infringing the '073 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**Prayer For Relief**

WHEREFORE, ZapFraud prays for judgment as follows:

A. That Mimecast has infringed the patents-in-suit;

B. That Mimecast's infringement of the patents-in-suit has been willful;

C. That Mimecast, its officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, inducing infringement, and contributory infringement of the patents-in-suit, including but not limited to the making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, any devices, products, software, or methods that infringe the patents-in-suit before their respective expiration dates;

D. That ZapFraud be awarded all damages adequate to compensate it for Mimecast's infringement, such damages to be determined by a jury and, if necessary to adequately compensate ZapFraud for the infringement, an accounting, and that such damages be trebled and awarded to ZapFraud with pre-judgment and post-judgment interest;

  E. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that ZapFraud be awarded the attorney fees, costs, and expenses incurred in connection with this action; and

  F. That ZapFraud be awarded such other and further relief as this Court deems just and proper.

## Demand For Jury Trial

  Plaintiff ZapFraud hereby demands a trial by jury on all issues so triable.


Dated: April 24, 2020          Respectfully submitted,

                  FARNAN LLP

                  */s/ Brian E. Farnan*
                  Brian E. Farnan (No. 4089)
                  Michael J. Farnan (Bar No. 5165)
                  919 North Market St., 12th Floor
                  Wilmington, DE 19801
                  Telephone: 302-777-0300
                  Facsimile: 302-777-0301
                  bfarnan@farnanlaw.com
                  mfarnan@farnanlaw.com

                  Jonas McDavit (admitted *pro hac vice*)
                  Wen Xue (admitted *pro hac vice*)
                  DESMARAIS LLP
                  230 Park Avenue
                  New York, NY 10169
                  Telephone: 212-351-3400
                  Facsimile: 212-351-3401
                  jmcdavit@desmaraisllp.com
                  wxue@desmaraisllp.com

                  *Attorneys for Plaintiff ZapFraud, Inc.*